IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PEDRO E. GARCIA                                                                                              PLAINTIFF

        v.                    Civil No. 04-5310

SGT. HOOK, DEPUTY (MCPHERSON) BRISON,
SGT. NANCE (formerly SHERRY),
and DEPUTY DANA LARKIN                                                                       DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pedro E. Garcia brings this pro se civil rights action under 42 U.S.C. § 1983. He contends that his constitutional rights were violated while he was detained in the Benton County Detention Center.

On September 29, 2005, the defendants filed a motion for summary judgment (Doc. 26). By order entered on October 12, 2005, Garcia was directed to complete, sign, date, and return an attached questionnaire that would serve as his response to the summary judgment motion. On October 19, 2005, the plaintiff's response (Doc. 30) to the summary judgment motion was filed. The summary judgment motion is currently before the undersigned for issuance of this memorandum opinion.

### I. Background

Garcia was arrested and booked into the Benton County Detention Center (BCDC) on June 29, 2004, on charges of Residential Burglary, Fleeing, and Failure to Appear. When he was booked into the detention center, he signed the Benton County Detainee Rules. On July 12, 2004, Garcia was involved in a fight with inmate Yoezer Paz, which led to a 30-day lock down. On July 13, 2004, pursuant to Garcia's request, he saw a jail doctor for bruises on his head and

face. (Response, Doc. 30 at ¶¶ 1-6.)

On November 10, 2004, a letter that Garcia had attempted to mail out the previous day was returned to him by Deputy Tomlin. Deputy Tomlin opened this letter in from of Garcia and discovered his jail-issued wristband inside. Tomlin inquired of Garcia as to why he was mailing his wrist band, and he responded that he was trying to send a picture of himself to his mother. Garcia was placed on a 30-day lock down for unauthorized use of the mail. (Doc. 30 at ¶¶ 7-10.)

Sometime in November 2004, Garcia claims that Sgt. Sherry[1] ordered Deputy Brison to put Garcia back in his cell. This order was made in response to Garcia violating a jail rule that prohibited communication with jail trustees. In the effort to place Garcia back in his cell, Deputy Brison twisted Garcia's left arm and "even after [Garcia] obeyed him, [Brison] still kept twisting." When Garcia told Brison to let go of his arm because he was hurting him, Sgt. Hook attempted to kick Garcia's legs out from underneath him. As a result of this incident, Garcia claims that he suffered pain in his left arm when he tried to pick up items, and he contends that he was denied medical attention. (Addendum, Doc. 6 at ¶ 5.)

Also in November 2004, Garcia alleges that Sgt. Sherry opened a letter that Garcia was attempting to mail to his girlfriend. Included in the letter was a cross made out of string. Sgt. Sherry removed the cross and returned the open letter to Garcia. According to Deputy Brison, Sgt. Sherry told Garcia to try to mail the letter without the cross. (Doc. 6 at ¶ 6.)

At the end of November 2004, Deputy Larkin of the SERT Team entered Garcia's cell for a shake down. During the shake down, Garcia was placed against the wall and he alleges that

---

[1] Sgt. Sherry is now Sgt. Nance, however for clarification purposes, she is referred to as Sgt. Sherry throughout this Report and Recommendation.

his head was slammed against the wall. As a result of this incident, Garcia contends that he had bad headaches and was panicked whenever a deputy came near him. (Doc. 6 at ¶ 7.) Garcia states that another inmate, Billy Joe Wolf, witnessed this event. (Doc. 30 at ¶ 21.)

Garcia states that he did file medical requests for his "twisted arm" and "bruised head" but that those requests were not included in the documents submitted by the defendants in the motion for summary judgment. Garcia also states that some of the medical requests included in the summary judgment motion belong to other inmates. (Doc. 30 at ¶ 13.)

Although his complaint is silent as to the capacity in which he is suing the defendants, in his summary judgment response, Garcia states that his intention was to sue the defendants in their personal and official capacities. (Doc. 30 at ¶ 16.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v.*

AO72A
(Rev. 8/82)

*Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

Here, Garcia raises three claims of constitutional violations: (1) that he was subjected to excessive force in two separate incidents, (2) that he was subjected to deliberate indifference to his serious medical needs, and (3) that Sgt. Sherry interfered with his right to send mail.

**Excessive Force**

Excessive force claims brought by a pretrial detainee, although grounded in the Fifth and Fourteenth Amendments, are analyzed under an objective reasonableness standard. *See Graham v. Conner*, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Due process requires that a pretrial detainee, such as the plaintiff in this case, not be punished. *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (due process requires that a pretrial detainee not be punished; the Eighth Amendment requires that the punishment imposed

AO72A
(Rev. 8/82)

not be cruel and unusual). Thus, excessive force claims are analyzed under the reasonable objectiveness standard instead of the standard used in Eighth Amendment cases.

The injuries received by a pretrial detainee "must be necessarily incident to administrative interests in safety, security, and efficiency. Constitutionally inform practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose, or those that are rationally related but are excessive in light of their purpose." *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (*citing Bell*, 441 U.S. at 539 n.20.)

Here there were two incidents that the plaintiff contends constituted excessive force. The first incident occurred when the plaintiff violated jail rules by talking to a trustee. When he did so, Sgt. Sherry ordered that he be placed in his cell. Deputy Brison grabbed plaintiff's arm and twisted it behind his back and continued to do this "even after" the plaintiff began to obey Deputy Brison. When the plaintiff complained about Deputy Brison and told Brison to release him, another deputy tried to kick plaintiff's feet out from underneath him. The plaintiff does not state if this deputy was successful in this attempt. This resulted in some pain in plaintiff's arm.

The second incident arose when Deputy Larkin entered plaintiff cell for a shake down. Plaintiff states that he was placed against the wall and that his head was slammed against the wall. Plaintiff states this resulted in headaches and a bruise on his head.

Neither of these incidents rise to the level of a constitutional violation. Both were done in an effort to maintain the safety and security of the detention center and the actions were not excessive towards those aims. Further, the injuries that plaintiff contends he sustained--pain in his arm when he tried to lift things, a headache, and a bruise--are de minimis. The de minimis nature of plaintiff's injuries does not support plaintiff's claims that he was subjected to excessive

AO72A
(Rev. 8/82)

force which amounts to punishment. *See Bell*, 441 U.S. at 535, *Johnson v. Glick*, 481 F.2d 1028, 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.") Therefore, defendants are entitled to summary judgment on plaintiff's claim that he was subjected to excessive force that violated his constitutional rights.

**Deliberate Indifference to Serious Medical Needs**

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) (analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d

413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Plaintiff also contends that defendants violated his constitutional rights when he was denied medical care for his arm and the bruise on his head following the incidents described

AO72A
(Rev. 8/82)

above. As noted above, these injuries were de minimis, and thus do not rise to the level necessary to constitute a constitutional violation. Also, defendants have provided evidence to show that on other occasions, the plaintiff was provided medical care when he requested it. Although the plaintiff states that he also requested medical care following the incidents relevant here, he has not been able to provide any proof of such requests. Defendants are entitled to summary judgment on this claim.

**Interference with Mail**

Garcia contends that a letter he sent to his girlfriend was opened by Sgt. Sherry outside of his presence and that his violated his constitutional rights. Prisoners have a right to send and receive mail; prison officials have a legitimate interest in monitoring that mail for security reasons. *See Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004.) While an inmate's privileged mail may not be inspected or opened by a jail official outside of the inmate's presence, *see Wolff v. McDonnell*, 418 U.S. 539, 574 (1974), a letter addressed to a girlfriend is not entitled to this same protection. Because of the reasonable concern for prison security and a detainee's diminished expectations of privacy, officials do not violate the constitution when they read an inmate's outgoing letters. *See Thongvanh v. Thalacker,* 17 F.3d 256, 258-59 (8th Cir. 1994) (stating that the prison's responsibility to maintain order my include reading incoming and outgoing mail, with exception of legal mail); *cf. United States v. Kelton*, 791 F.2d 101, 103 (8th Cir. 1986). Therefore, defendant's motion for summary judgment should be granted on this claim.

AO72A
(Rev. 8/82)

**County Liability**

As the plaintiff has failed to sustain an underlying substantive claim under which his constitutional rights were violated, municipal liability does not attach. *See McCoy v. City of Monticello*, 441 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim").

## IV. Conclusion

Therefore, I recommend that defendants' motion (Doc. 26) be granted.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of June 2006.

                                               **/s/ Beverly Stites Jones**
                                               _____
                                               HON. BEVERLY STITES JONES
                                               UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)